UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                                                  Case No. 12-31299
    Jeffrey A. Cook and                                            Chapter 13
    Sherrie A. Cook
                         Debtors.

**Memorandum-Decision and Order**

This chapter 13 case was commenced on July 5, 2012 at 2:36 p.m. eastern standard time. On the morning of that day, at least two hours prior to the filing, the Debtors' residence located at 2733 Franklin Street, Weedsport, New York was sold at a foreclosure sale as the final step of a foreclosure proceeding brought by Nationstar Mortgage, LLC, the holder of the first mortgage. Thereafter, on August 19, 2012, Debtors' counsel filed the present motion to "enforce the automatic stay or to avoid transfer of real property." (Docket No. 18) ("Motion"). The Motion, returnable before the court on September 11, 2012, was served on the purchaser at the sale, David Heuy, the two secured creditors holding the first and second mortgages, and the chapter 13 trustee. This memorandum-decision sets forth this court's findings of fact and conclusions of law in denying the Motion.

*Factual Background*

The facts are not in dispute and the court accepts the debtors' factual allegations as to value for purposes of this decision. Debtors list their residence at a value of $129,000, based upon the tax assessment ascribed by Cayuga County. The Debtors' schedules list two mortgages that encumber the property: the first, held by Nationstar Mortgage, LLC, in the amount of $59,000.00 and the second, held by First Niagara Bank, in the amount of $56,120.00. Debtors' schedules also claim a homestead exemption in

1

the remaining equity of $22,880.00 in the property. Debtors reside on the property with their two dependent children.

According to counsel's affidavit, Debtors were aware of the pending foreclosure proceeding but mistakenly believed that the property was scheduled for sale on July 9, 2012. Counsel avers that he unsuccessfully attempted to verify the date of the foreclosure sale. Debtors executed their voluntary petition on July 3, 2012, as reflected by the date below their signature line. On the morning of July 5, David Heuy purchased the property for $66,600.00 at the foreclosure sale, depositing ten percent of the sales price with the state court-appointed referee. Hours later, Debtors filed their petition in bankruptcy. Neither in the papers filed with the court, nor, when specifically asked by the court, did counsel allege that there was anything irregular about the conduct of the foreclosure sale conducted pursuant to New York State law nor question the good faith of the purchaser. The court, further, takes judicial notice of the fact that neither the purchaser nor the foreclosing first mortgagee has filed a proof of claim in this bankruptcy proceeding.

***Arguments of Debtors' Counsel***

The Debtors allege that they have "an equitable possessory interest" in the property which, they aver, is sufficient to invoke the automatic stay, relying upon *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987). Recognizing that the foreclosure sale effected a transfer of legal title to the property, counsel relies upon his clients' continued possession to prevent Heuy from taking any additional steps "to obtain title or possession" to the property, citing to 11 U.S.C. §§ 362(a)(3) and (5).[1] In addition to enforcing the automatic stay, the Motion requests this court to declare that the foreclosure sale is null and void.

---

[1] Title 11 hereinafter referred to as "Bankruptcy Code" or "Code".

2

Debtors further seek to avoid as a fraudulent transfer under Bankruptcy Code § 548(a), the transfer of the Debtors' property to Heuy for $66,600.00, a sum which Debtors allege is "considerably below" fair market value. Based upon the stated value of the Debtors' assets and liabilities as listed in their schedules, Debtors claim that they were insolvent at the time of the foreclosure sale. Debtors further claim that because less than a reasonably equivalent value was realized at the sale, the transfer to Heuy may and should be avoided. Debtors cite to this court's opinion in *In re Martyak*, 432 B.R. 25 (Bankr. N.D.N.Y. 2010), as setting forth the legal standard and measure of proof, both of which they claim they have met, for setting aside the transfer.

***Discussion***

The provisions of the automatic stay which the Debtors invoke enjoin, respectively, "any act to obtain possession of ... or to exercise control over *property of the estate*" and "any act to ... enforce against *property of the debtor...any lien.*" Code §§ 362(a)(3) and(5) (emphasis supplied). At the time bankruptcy was filed, the Debtors had been divested of their interest in the property. *See Kolkunova v. Guaranteed Home Mortg. Co.*, 43 A.D.3d 878, 878, 842 N.Y.S.2d 46, 47 (N.Y. App. Div. 2d Dep't 2007) ("The right to redeem is extinguished as a matter of law upon the foreclosure sale, whether or not the deed has been delivered."). The *Kolkunova* court found that "[o]nce the right to redeem is lost, it cannot be revived, even by court order," *id.* (citations omitted), and concluded that the plaintiff before it "lacked any interest in the premises at the time of commencement of this action and therefore lacked standing to commence an action to reinstate her right to redeem the property." *Id.* Since the Debtors had no interest in the property at the time of filing, it never became property of the estate under Code §

3

541, and, therefore, the property was not under the protection of the automatic stay, nor is there any stay to enforce with regard thereto. *See Piccolo v. Dime Savings Bank of New York*, 145 B.R. 753, 756 (N.D.N.Y. 1992).

The Debtors request that the foreclosure sale be declared null and void and the transfer to the purchaser be set aside under Code § 548(a)(1)(B)(i) and (ii).[2] Pursuant to the language of the foregoing statute, Debtors claim that, at a time when they were insolvent, they received less than a "reasonably equivalent value" for the transfer of their property at the foreclosure sale, relying upon the difference between what was paid and the claimed fair market value. Debtors' reliance on this court's decision in *In re Martyak*, 432 B.R. 25, involving an *in rem* tax foreclosure proceeding is misplaced. Because the Debtors in that case did not establish that they were insolvent, this court never reached the question that has been answered by other bankruptcy courts in this circuit---namely, that taxing authorities are not conclusively presumed to have provided reasonably equivalent value when conducting *in rem* tax foreclosures for unpaid taxes, leaving open the potential to avoid them as fraudulent transfers. *See Herkimer Forest Products Corp., v. County of Clinton (In re Herkimer Forest Products Corp.)*, No. 04-90148, 2005 WL 6237559 (Bankr. N.D.N.Y. July 26, 2005); *Wentworth v. Town of Acton (In re Wentworth)*, 221 B.R. 316 (Bankr. D. Conn. 1998). However, the present case involves a sale of property in the context of a mortgage foreclosure and the United States Supreme Court has conclusively settled the law in this area. Writing for the majority, Justice Scalia in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), addressed the meaning of

---

[2] In pertinent part, Code §548(a)(1)(B) provides: "The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(i) received less than a reasonably equivalent value in exchange for such transfer . . . and (ii)[] was insolvent on the date that such transfer was made."

4

"reasonably equivalent value" under Bankruptcy Code § 548 in the context of a mortgage foreclosure sale. The court declined to read the term to mean fair market value nor what might be considered a fair foreclosure price. Rather, as the court stated:

> "We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with."

*BFP*, 511 U.S. at 545. Given this holding and the fact that the Debtors raise no issue as to the manner in which the foreclosure process was conducted, Debtors are unable to establish that the property was transferred for less than reasonably equivalent value, one of the two required elements for avoiding the sale as a fraudulent transfer under Bankruptcy Code § 548(a)(1)(B). The Supreme Court in its opinion recognized that a sale might be set aside under state foreclosure law, rather than fraudulent transfer law, if the price received is "so low as to 'shock the conscience or raise a presumption of fraud or unfairness.'" *Id.* at 542 (citations omitted). However, the $66,600 purchase price in this case, representing 52% of the Debtors' estimated fair market value of the property, would not, standing alone, be deemed so grossly inadequate as to "shock the conscience" and allow the sale to be undone under the case law as developed in New York. *See Polish Nat'l Alliance of Brooklyn v. White Eagle Hall Co.*, 98 A.D.2d 400, 408, 470 N.Y.S.2d 642, 649 (N.Y. App. Div. 2d Dep't 1983) ("[F]oreclosure sales at prices below 10% of value have consistently been held unconscionably low in this State while sales at 50% or more of value have been consistently upheld."(citations omitted)).

For the foregoing reasons, this court denies the relief sought by the Debtors as unwarranted under existing law. Notwithstanding that the forms of relief sought by the Debtors appear to be "core proceedings" under the provisions of 28 U.S.C. §§ 157(b)(2)

5

(G) and (H), involving determinations as to the automatic stay and avoidance of a purported fraudulent transfer, the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), gives this court pause as to its ability to enter a final order with respect to the fraudulent transfer claim and the request to declare the sale null and void. As noted above, neither the foreclosing mortgagee nor the purchaser filed a claim in bankruptcy, nor did they respond or appear on the return date of the Motion. In light of this court's determination to deny awarding affirmative relief in favor of the Debtors, it will proceed to enter this order. Nevertheless, if a reviewing court subsequently should determine that this court did not have the constitutional authority to enter a final order, then this memorandum-decision is submitted as proposed findings of fact and conclusions of law for appropriate review and consideration by the district court. *See Kirschner v. Agoglia*, 476 B.R. 75, 82 (S.D.N.Y. 2012).

So ordered.

Dated: October 5, 2012
Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge